UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY WORLEY, *et al.*, ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Case No. 1:12-CV-02069 (RCL) |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, ) | |
| *et al.*, ) | |
| Defendants ) | |
| ) | |

## MEMORANDUM OPINION

### I. BACKGROUND

This action arises out of the 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon. The attack resulted in the deaths of 241 U.S. servicemen. Many more were wounded. Still more were permanently traumatized. Among those killed were David E. Worley, John B. Buckmaster, Virgel Hamilton, Lloyd Dennis West, and Roy Lee Edwards. Also present were Mario H. Vasquez and Jeffrey Dadich. These individuals, their estates, and their family members bring this suit against the Islamic Republic of Iran and the Iranian Ministry of Information and Security under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* ("FSIA"), which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"). Pub. L. No. 110-118, § 1083, 122 Stat 3, 338–44 (2008). The exception, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011).

## II. LABILITY

In an order and accompanying memorandum opinion, ECF Nos. 32 and 33, dated December 8, 2014, the Court found that it had subject matter jurisdiction over this dispute and that it could properly exercise personal jurisdiction over the defendants. In the same order and opinion, the Court found the defendants liable under 28 U.S.C. § 1605A(c) for wrongful death, assault, battery, and intentional infliction of emotional distress, as well as survival claims arising out of the same. In accordance with its liability determination and pursuant to its authority under Federal Rule of Civil Procedure 53, the Court appointed Alan Balaran Special Master for the purpose of taking evidence and filing reports and recommendations regarding the amount of individual damages to be afforded each plaintiff.

In that same memorandum opinion, the Court noted that the various estate plaintiffs had failed to present evidence regarding their ability to bring and maintain the claims they alleged. Mem. Op. 26–27. Accordingly, the Court directed the Special Master to take evidence and make specific findings on the state law that governs each estate plaintiff's claim, and whether under that law the estate plaintiff has standing to bring the claim. *Id.* at 27. The Special Master has done so, and the Court hereby **ADOPTS** the Special Master's findings with regard to the estate plaintiffs' standing under state law.

## III. DAMAGES

Damages available under the FSIA include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Those individuals who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). Correspondingly, the estates of those who did not survive may recover economic losses

stemming from wrongful death of the decedent. *Id.* Family members may recover solatium for emotional injury, and all plaintiffs are eligible to recover punitive damages. *Id.*

"To obtain damages in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were reasonably certain" to occur, and "must prove the amount of damages by a reasonable estimate consistent with this Circuit's application of the American rule on damages." *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 46 (D.D.C. 2012) (internal quotation marks omitted); *see Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003).

The Court hereby **ADOPTS** all facts found by and recommendations rendered by the Special Master relating to the damages suffered by all plaintiffs in this case. An evaluation of each category of damages and the Special Master's specific findings thereon follows.

### A. Pain and Suffering

Assessing appropriate damages for physical injury or mental disability can depend upon myriad factors, such as "the severity of pain immediately following the injury, the length of hospitalization, and the extent of impairment that will remain with the victim for the rest of his or her life." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 52 n.26 (D.D.C. 2007) (*Peterson II*) (quoting *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson II*, this Court adopted a general procedure for the calculation of pain and suffering damages in terrorist attacks under which those servicemen suffering psychological harm are awarded $1.5 million in pain and suffering damages. *See* 515 F. Supp. 2d at 56; *see also Valore*, 700 F. Supp. 2d at 84.

This Court has also awarded pain and suffering damages to the estates of those victims of terrorist attacks who were injured in the attack, but later succumbed to their injuries. *See, e.g.*,

*Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1, 8 (D.D.C. 2000) (awarding pain and suffering damages to the estates of deceased victims where expert testimony established a period of several minutes elapsed between injury and death). In this action, the estates of John B. Buckmaster and David E. Worley bring survival claims for pain and suffering. Pls.' Am. Compl., ECF No. 43, at 10, 13–14. The Special Master declined to award pain and suffering damages to these estates due to the lack of evidence indicating death was anything but instantaneous for both of these men. Report of Special Master Counts I–IV, ECF No. 46, at 13; Report of Special Master Counts V–VIII, ECF No. 47, at 11. The Court agrees with the Special Master. In the absence of evidence tending to show an attack resulted in the fatal but noninstantaneous injury of a victim and that the victim was conscious thereafter, *see, e.g.*, *Peterson II*, 515 F. Supp. 2d at 53, an award of pain and suffering is inappropriate.

After reviewing the Special Master's reports, the Court finds the Special Master correctly applied the damages framework outlined in *Peterson II* and *Valore*, and therefore **ADOPTS** the Special Master's pain and suffering awards.

### B. Solatium

This Court follows the standardized approach for FISA-derived claims of intentional infliction of emotional distress established in *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (2006) under which "[s]pouses typically receive greater damage awards than parents," who in their own right are entitled to greater sums than siblings. *Id.* Relying on the average awards given in these types of FSIA cases, the *Heiser* court concluded spouses of deceased victims are to be awarded $8 million, parents $5 million, and siblings $2.5 million. *Id.* Children of a deceased victim are typically awarded $3 million. *Stern v. Islamic Republic of Iran* 271 F. Supp. 2d 286, 301 (D.D.C. 2003). In the context of distress resulting from injury rather than

death, this Court has applied a framework whereby such awards are valued at half of the awards to family members of victims killed in an attack. *O'Brien*, 853 F. Supp at 47. Accordingly, under this metric, spouses are entitled to $4 million, parents $2.5 million, siblings $1.25 million, and children $1.5 million. *Id.*

Even under these standardized rubrics, this Court remains cognizant that "these numbers are not set in stone." *Id.* "[D]eviations may be warranted," *id.*, where, for instance, the evidence demonstrates a particularly close bond between the victim and the claimant, *Oveissi v. Islamic Republic of Iran*, 786 F. Supp. 2d 16, 26 (D.D.C. 2011), or, conversely, where the evidence tends to demonstrate an uncommonly attenuated relationship, *Valore*, 700 F. Supp. 2d at 86. In this instance, the Special Master has made no upward deviations from the *Heiser* framework. The Special Master recommends a downward deviation from *Heiser* for the claims brought by deceased serviceman Roy Edwards' siblings. The Special Master specifically noted "the testimony elicited from Roy Edwards' siblings simply do not prove a close emotional relationship" because they each testified they had only seen Mr. Edwards twice in the nearly 24 years preceding the attack. Special Master's Report Regarding Count XII, ECF No. 49, at 14–16 (internal quotation marks omitted). In light of the Special Master's findings, the Court agrees that a downward deviation for the claims brought by Roy Edwards' siblings is appropriate, and, accordingly **ADOPTS** the Special Master's recommendation they be awarded $800,000.

With the exception of the claims of Karen Contrillo and Patricia Ulakovich as discussed below, the Court further **ADOPTS** the Special Master's recommendations for the remaining solatium claims in this action.

## C. Economic Damages

As set forth above, 28 U.S.C. § 1605A(c) provides a statutory cause of action for economic damages arising from an act of state-sponsored terrorism. By order dated December 9, 2015, the Court remanded to the Special Master the claims of the estates of David Worley and John Buckmaster for a more complete development of the evidentiary record supporting the Special Master's economic damages recommendations for those claims. ECF No. 63 at 4. On March 18, 2016 the Special Master filed his supplemental report. In it, the Special Master noted the plaintiffs' counsel and their economic expert's complete failure to respond to his requests for further evidentiary support for their proffered economic damages claims. The Court therefore **ADOPTS** the Special Master's revised recommendation regarding these two claims. Accordingly, the estate of John Buckmaster shall be awarded $830,424 in economic damages. The estate of David Worley shall be awarded $950,000 in economic damages.

## D. Punitive Damages

The FSIA also permits the recovery of punitive damages. 28 U.S.C. § 1605A(c). "[P]unitives are aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008). This Court has repeatedly observed that "recurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 81 (D.D.C. 2010). The concern of overly punishing a defendant, nevertheless, must be weighed against the need to deter "the brutal actions of defendants in planning, supporting, and aiding the execution of terrorist attacks." *O'Brien*, 853 F. Supp at 48 (quoting *Rimkus v. Islamic Republic of Iran,* 750 F. Supp. 2d 163, 184 (D.D.C. 2010)). To that end, this Court has held that the calculation of punitive

damages in cases arising out of the Beirut Bombings should adhere to the ratio of punitive to compensatory damages set forth in earlier cases arising out of the same events. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in the past, the Court has awarded $3.44 in punitive damages for each compensatory dollar awarded. *See id.* at 82–83. The Court will once again apply that ratio and award plaintiffs a total of $196,356,659 in punitive damages.

## IV. OTHER PENDING MOTIONS

Also before the Court are plaintiffs' motions to dismiss the estates of Richard Morrow and Jane Chipura, ECF Nos. 55, 56, and 57, as well as plaintiffs' motion for the appointment of a guardian ad litem, ECF No. 68. For the following reasons and by separate order, plaintiffs' motions to dismiss shall be **GRANTED** and plaintiffs' motion for the appointment of a guardian ad litem shall be **DENIED**.

In the same order remanding the economic damage claims of John Buckmaster and David Worley, the Court also addressed the potential problems presented by the claims of the estate of Richard Morrow and the related solatium claims of Karen Contrillo and Patricia Ulakovich. Specifically at issue was the exclusion of Richard Morrow's estate from the Court's liability determination in December 2014 due to plaintiffs' inability to properly open Morrow's estate under applicable state law. Accordingly, no liability judgment was entered on his behalf. Moreover, because Morrow's estate claims pain and suffering damages, the Court expressed its reluctance to award Contrillo and Ulakovich solatium damages in light of this Court's previous refusal to allow solatium claimants to receive more than the injured serviceman's pain and suffering award. Dec. 9 Order at 3; *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011). Compounding the issue was the Court's doubt that a nonprejudicial dismissal of

Contrillo's and Ulakovich's claims would be proper after the Court had already entered a liability finding in their favor.

Upon reconsideration, the Court concludes it may vacate the liability finding in favor of Karen Contrillo and Patricia Ulakovich and dismiss their claims without prejudice. The Court, nevertheless, does not do so lightly, and neither does it do so pursuant to Federal Rule of Civil Procedure 41(a)(1), as dismissal as a matter of right is precluded by the age and posture of this litigation. *See Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2nd Cir. 1953). However, under the present circumstances, the interests of justice dictate these claimants should be permitted to dismiss their claims from this action so that they, along with the estate of Richard Morrow, may seek compensation for their alleged injuries. Pursuant to this Court's authority under Rule 41(a)(2), Contrillo and Ulakovich shall therefore have fourteen days from the issuance of the order accompanying this opinion to seek to file an amended complaint in *Bova v. Islamic Republic of Iran*, No. 15-CV-01074, (filed July 8, 2015). A failure to do so shall have the result of rendering this dismissal with prejudice. Subject to the foregoing, the Court shall therefore **GRANT** the plaintiffs' motion to dismiss the claims of Karen Contrillo and Patricia Ulakovich. It shall also **GRANT** the voluntary dismissal of the estates of Jane Chipura and Richard Morrow.

Finally, plaintiffs have moved for an appointment of a guardian ad litem for Richard Morrow Jr., ECF No. 68, plaintiff Richard Morrow's son. Richard Morrow Jr. is not a party in this litigation. Any doubts as to the grounds under which the Court may appoint a guardian ad litem under the present circumstances aside—and those doubts are as numerous as they are substantial—there is no question this Court is without the power to appoint a guardian ad litem for a person who is not a party before it. Plaintiffs' motion shall be **DENIED**.

## IV. CONCLUSION

The compensation the Court awards today has been long due. However, it is imperfect and incomplete—no sum of money can fully compensate these plaintiffs for their losses. Nor can a monetary judgment meaningfully punish those who have perpetrated these acts. Monetary compensation is, nevertheless, the only tool available to this Court to accomplish both of those ends. And despite its doubts, the Court hopes this award provides some degree of solace to these victims and will equally have some deterrent effect on those states that would utilize terror as a means of advancing their political and religious goals. A separate order shall issue this date.

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge

DATE: 3/31/16